

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2020 OCT 16 ₱ 2: 09

CAROL L. MICHEL
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

# FELONY

## INDICTMENT FOR CONSPIRACY TO COMMIT
## MAIL FRAUD, MAIL FRAUD, AND NOTICE OF FORFEITURE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 20-** $20-00108$ |
| **v.** | * | **SECTION: " "** **SECT. B MAG. 4** |
| **ANTHONY ROBINSON** | * | **VIOLATIONS: 18 U.S.C. § 371** |
| **AUDREY HARRIS** | | **18 U.S.C. § 1341** |
| **JERRY SCHAFFER** | * | **18 U.S.C. § 2** |
| **KEISHIRA ROBINSON** | | |
| | * | |

\*       \*       \*

The Grand Jury charges that:

## COUNT 1
(Conspiracy to Commit Mail Fraud)

**A.    AT ALL TIMES MATERIAL HEREIN:**

1.    Defendants **ANTHONY ROBINSON**, **AUDREY HARRIS ("HARRIS")**, **JERRY SCHAFFER ("SCHAFFER")**, and **KEISHIRA ROBINSON** resided in the New Orleans metropolitan area and were involved in a staged accident with a tractor-trailer occurring in the New Orleans area in 2015.

Fee_____
Process_____
X  Dktd_____
___ CtRmDep_____
___ Doc. No._____

2.    **ANTHONY ROBINSON**, **HARRIS**, and **KEISHIRA ROBINSON** were related.

3.    A "slammer" was an individual who drove a vehicle and intentionally collided with 18-wheeler tractor-trailers and other commercial vehicles in order to stage accidents.

4.    A "spotter" was an individual who would follow a slammer in a separate vehicle and would pick up the slammer after the staged accident in order to flee the scene and evade detection.

5.    Damien Labeaud ("Labeaud") served as both a slammer and a spotter.

6.    Co-Conspirator A served as both a slammer and a spotter.

7.    Attorneys A, B, and C were personal injury attorneys licensed to practice in Louisiana.

8.    Attorneys A and B operated a law firm together with other attorneys in New Orleans.

9.    Attorney C operated a law firm together with other attorneys in New Orleans.

10.    The area near the intersection of Alvar Street and France Road was located in the Eastern District of Louisiana.

11.    C.R. England, Inc. ("C.R. England") was a family-owned interstate commercial trucking company headquartered in Salt Lake City, Utah.

12.    Truck Driver A worked for C.R. England and resided in Michigan.

13.    Chubb was a publicly traded property and casualty ("P&C") insurance company with global operations.

14.    Chubb bought Ace American Insurance Company ("Ace"), which was headquartered in Philadelphia, Pennsylvania.

15.     C.R. England was self-insured up to $1,000,000.00 per claim for vehicle accidents, and Chubb, previously Ace, provided excess insurance coverage for C.R. England.

16.     GoAuto Insurance Company ("GoAuto") was a domestic auto insurance company that maintained offices throughout Louisiana.

17.     GoAuto insured the vehicle owned by **ANTHONY ROBINSON**.

18.     C.R. England utilized law firms based in Louisiana to provide legal representation with respect to the staged accident that occurred on October 13, 2015, between a C.R. England tractor-trailer and a vehicle owned by **ANTHONY ROBINSON**.

19.     On or about September 26, 2016, Attorney B filed a Petition for Damages in the Civil District Court for the Parish of Orleans, State of Louisiana ("CDC"), on behalf of **HARRIS**, **SCHAFFER**, and **KEISHIRA ROBINSON** ("Harris Lawsuit").

20.     The Harris Lawsuit sought to recover damages from C.R. England, Truck Driver A, **ANTHONY ROBINSON**, and GoAuto.

21.     On or about October 3, 2016, Attorney C filed a cross-claim in CDC on behalf of **ANTHONY ROBINSON** ("Robinson Cross-Claim").

22.     The Robinson Cross-Claim sought to recover damages from C.R. England and Truck Driver A.

23.     On or about April 2, 2019, **HARRIS**, **SCHAFFER**, and **KEISHIRA ROBINSON** retained additional counsel licensed to practice in Louisiana to represent them in the Harris Lawsuit.

**B.     THE CONSPIRACY**:

Beginning at a time unknown, and continuing until the date of this Indictment, in the Eastern District of Louisiana and elsewhere, the defendants, **ANTHONY ROBINSON**,

3

**AUDREY HARRIS**, **JERRY SCHAFFER**, and **KEISHIRA ROBINSON**, and others known and unknown to the Grand Jury, willfully and knowingly did combine, conspire, confederate, and agree to devise a scheme and artifice to defraud and to obtain money and property from insurance companies and commercial vehicle companies, by means of materially false and fraudulent pretenses, representations, and promises, and willfully cause mail matter to be delivered by the United States Postal Service for the purpose of executing or attempting to execute the Scheme to Defraud set forth in Section C, in violation of Title 18, United States Code, Section 1341.

## C.  THE SCHEME TO DEFRAUD:

It was part of the scheme and artifice to defraud that, beginning on a date unknown, but before on or about 2015, Labeaud and Co-Conspirator A worked as "runners" for Attorney A, in that Labeaud and Co-Conspirator A would refer persons involved in legitimate motor vehicle accidents to Attorney A in exchange for money. It was agreed that Attorney A would pay Labeaud and Co-Conspirator A $1,000.00 per passenger for accidents with tractor-trailers and $500.00 per passenger for accidents that did not involve tractor-trailers.

It was further part of the scheme and artifice to defraud that, while working together as runners, Labeaud and Co-Conspirator A brought at least twenty (20) accidents to Attorney A.

It was further part of the scheme and artifice to defraud that, in or around 2015, Labeaud and Co-Conspirator A also began working together to stage accidents.

It was further part of the scheme and artifice to defraud that Labeaud and Co-Conspirator A both served as slammers and spotters in staged accidents.

It was further part of the scheme and artifice to defraud that Labeaud and Co-Conspirator A agreed to share the proceeds they obtained for accidents that they staged together.

4

It was further part of the scheme and artifice to defraud that Labeaud and Co-Conspirator A brought persons involved in illegally staged accidents to Attorney A in exchange for money, and Attorney A knew that Labeaud and Co-Conspirator A were staging accidents.

It was further part of the scheme and artifice to defraud that Labeaud, Co-Conspirator A, and Attorney A would sometimes discuss the staging of accidents before they happened.

It was further part of the scheme and artifice to defraud that in order to conceal their activity, Labeaud, Co-Conspirator A, and Attorney A communicated through coded language, including fishing terms, to refer to staged accidents.

It was further part of the scheme and artifice to defraud that Attorney A would pay Labeaud and Co-Conspirator A via cash and check for staged and legitimate accidents.

It was further part of the scheme and artifice to defraud that Attorney A would sometimes loan Labeaud and Co-Conspirator A money and then subtract the loan amount when calculating how much was owed to Labeaud and Co-Conspirator A for a staged accident.

It was further part of the scheme and artifice to defraud that Attorney A represented Labeaud and Co-Conspirator A in accidents that they were each involved in, and concealed subsequent payments to them for staging accidents as advances on their settlement and/or loans.

It was further part of the scheme and artifice to defraud that Attorney A employed Labeaud to complete various tasks at Attorney A's law firm as another way to conceal payments to him for staging accidents.

It was further part of the scheme and artifice to defraud that, from approximately 2015 to approximately 2017, Labeaud and Co-Conspirator A staged at least one hundred (100) accidents.

### The October 13, 2015 Staged Accident

It was further part of the scheme and artifice to defraud that, on or about October 13, 2015, **ANTHONY ROBINSON** met with Labeaud and Co-Conspirator A at an apartment complex located at 7001 Bundy Road in New Orleans and agreed to stage an automobile accident in order to obtain money through fraud.

It was further part of the scheme and artifice to defraud that **ANTHONY ROBINSON** paid Labeaud approximately $2,000.00 cash to participate in the staged accident.

It was further part of the scheme and artifice to defraud that **ANTHONY ROBINSON**, **HARRIS**, **SCHAFFER**, and **KEISHIRA ROBINSON** departed from the apartment complex with **ANTHONY ROBINSON** driving his 2002 Chevrolet Tahoe ("Tahoe").

It was further part of the scheme and artifice to defraud that Labeaud and Co-Conspirator A followed the Tahoe in a separate vehicle.

It was further part of the scheme and artifice to defraud that, after departing the apartment complex but before the staged collision, the two vehicles pulled over so that **ANTHONY ROBINSON** and Co-Conspirator A could switch places.

It was further part of the scheme and artifice to defraud that Co-Conspirator A drove **HARRIS**, **SCHAFFER**, and **KEISHIRA ROBINSON** in the Tahoe to locate another vehicle to collide with in the area of Alvar Street and France Road in New Orleans.

It was further part of the scheme and artifice to defraud that Labeaud and **ANTHONY ROBINSON** followed the Tahoe in a separate vehicle.

It was further part of the scheme and artifice to defraud that, at approximately 6:18 P.M., Co-Conspirator A, while driving southbound on Alvar Street near the intersection of France Road,

observed a 2016 Freightliner semi tractor-trailer operated by C.R. England changing lanes from right to left, and that Co-Conspirator A intentionally collided with the C.R. England tractor-trailer.

It was further part of the scheme and artifice to defraud that Co-Conspirator A exited **ANTHONY ROBINSON**'s Tahoe after the collision, and **ANTHONY ROBINSON** got behind the wheel of the Tahoe to make it appear that he was driving the vehicle at the time of the staged accident.

It was further part of the scheme and artifice to defraud that Labeaud picked up Co-Conspirator A after Co-Conspirator A fled from the scene.

It was further part of the scheme and artifice to defraud that **HARRIS** contacted the New Orleans Police Department ("NOPD") to report that she had been in an automobile accident.

It was further part of the scheme and artifice to defraud that **ANTHONY ROBINSON** falsely reported to the NOPD that he had been the driver of the Tahoe and that the tractor-trailer had struck his vehicle.

It was further part of the scheme and artifice to defraud that after the NOPD left the scene of the accident, **ANTHONY ROBINSON**, **HARRIS**, **SCHAFFER**, and **KEISHIRA ROBINSON** rendezvoused with Labeaud at a gas station on Louisa Street and Almonaster Street.

It was further part of the scheme and artifice to defraud that, later the same evening, Labeaud took **ANTHONY ROBINSON**, **HARRIS**, **SCHAFFER**, and **KEISHIRA ROBINSON** to Attorney A's office, and they entered the law firm through a rear stair entrance.

It was further part of the scheme and artifice to defraud that Attorney A met with **ANTHONY ROBINSON**, **HARRIS**, **SCHAFFER**, and **KEISHIRA ROBINSON** in order to discuss Attorney A's representation of them.

It was further part of the scheme and artifice to defraud that Attorney A paid Labeaud in cash and check for staging the accident.

It was further part of the scheme and artifice to defraud that Attorney A caused approximately $2,000.00 cash to be withdrawn from Attorney A's personal law firm account on October 13, 2015, the day of the accident.

It was further part of the scheme and artifice to defraud that Attorney A caused approximately $1,300.00 cash to be withdrawn from Attorney A's personal law firm account on October 13, 2015, the day of the accident, based on a check to cash dated October 8, 2015.

It was further part of the scheme and artifice to defraud that Attorney A paid Labeaud approximately $1,500.00 from Attorney A and B's law firm account on October 14, 2015, the day after the accident.

It was further part of the scheme and artifice to defraud that Attorney A caused approximately $2,000.00 cash to be withdrawn from Attorney A's personal law firm account on October 16, 2015, based on a check to cash dated the same day.

It was further part of the scheme and artifice to defraud that after receiving payment from Attorney A, Labeaud paid Co-Conspirator A in cash for this staged accident.

It was further part of the scheme and artifice to defraud that, on or about September 26, 2016, Attorney B filed the Harris Lawsuit in CDC.

It was further part of the scheme and artifice to defraud that, approximately six months after the accident, and no later than October 3, 2016, Attorney A referred **ANTHONY ROBINSON** to Attorney C for representation.

It was further part of the scheme and artifice to defraud that, on or about October 3, 2016, Attorney C filed the Robinson Cross-Claim in CDC.

It was further part of the scheme and artifice to defraud that **ANTHONY ROBINSON**, **HARRIS**, **SCHAFFER**, and **KEISHIRA ROBINSON** were treated by known doctors and healthcare providers at the direction of their attorneys.

It was further part of the scheme and artifice to defraud that **ANTHONY ROBINSON**, **HARRIS**, **SCHAFFER**, and **KEISHIRA ROBINSON** were given loans or advances on their settlement by Attorneys A, B, and C.

It was further part of the scheme and artifice to defraud that, on or about August 21, 2017, Attorney B demanded approximately $4,000,000.00 in settlement for **HARRIS**, approximately $1,000,000.00 in settlement for **SCHAFFER**, and approximately $175,000.00 in settlement for **KEISHIRA ROBINSON**.

It was further part of the scheme and artifice to defraud that, on or about September 28, 2017, **ANTHONY ROBINSON**, **HARRIS**, **SCHAFFER**, and **KEISHIRA ROBINSON** each provided false testimony in depositions taken in conjunction with the Harris Lawsuit and the Robinson Cross-Claim.

It was further part of the scheme and artifice to defraud that, on or about September 15, 2018, Attorney C demanded approximately $4,800,000.00 in settlement for **ANTHONY ROBINSON**.

D.      **OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY**:

The below listed Overt Acts all occurred on or about October 13, 2015, unless noted otherwise.

1.      **ANTHONY ROBINSON**, **HARRIS**, **SCHAFFER**, and **KEISHIRA ROBINSON** agreed to allow Co-Conspirator A to drive **ANTHONY ROBINSON**'s Tahoe in

order to stage an automobile accident, while Labeaud and **ANTHONY ROBINSON** travelled behind them in a spotter vehicle.

2.      At approximately 6:18 P.M., Co-Conspirator A, while driving south on Alvar Street near the intersection of France Road, intentionally collided with a C.R. England tractor-trailer.

3.      After the staged accident, Co-Conspirator A fled the scene, and **ANTHONY ROBINSON** got behind the wheel of the Tahoe to make it appear that he was driving the vehicle at the time of the staged accident.

4.      Co-Conspirator A rendezvoused with Labeaud, who was following the Tahoe, and picked up Co-Conspirator A after the accident.

5.      After the accident, **HARRIS** contacted the NOPD to report that she and others had been in an automobile accident.

6.      At approximately 7:45 P.M., NOPD responded to the scene of the staged accident and, shortly thereafter, **ANTHONY ROBINSON** falsely reported to the NOPD that he had been the driver of the Tahoe and that the C.R. England tractor-trailer struck his vehicle.

7.      Later the same evening, Labeaud took **ANTHONY ROBINSON**, **HARRIS**, **SCHAFFER**, and **KEISHIRA ROBINSON** to Attorney A's law firm in order to discuss Attorney A's representation of them.

8.      Attorney A paid Labeaud for the **ANTHONY ROBINSON**, **HARRIS**, **SCHAFFER**, and **KEISHIRA ROBINSON** staged accident.

9.      Labeaud paid Co-Conspirator A for working with him to stage the **ANTHONY ROBINSON**, **HARRIS**, **SCHAFFER**, and **KEISHIRA ROBINSON** staged accident.

10.     On or about September 26, 2016, Attorney B filed the Harris Lawsuit in CDC.

11.     On or about October 3, 2016, Attorney C filed the Robinson Cross-Claim in CDC.

12.     **ANTHONY ROBINSON** subsequently underwent neck and back surgery by doctors and healthcare providers to whom he was referred by Attorneys A and B for "treatment" due to the staged accident.

13.     **AUDREY HARRIS** subsequently underwent neck and back surgery by doctors and healthcare providers to whom she was referred by Attorneys A and B for "treatment" due to the staged accident.

14.     **JERRY SCHAFFER** subsequently underwent back surgery by doctors and healthcare providers to whom he was referred by Attorneys A and B for "treatment" due to the staged accident.

15.     On or about December 28, 2016 and March 2, 2017, **ANTHONY ROBINSON** received checks totaling approximately $3,000.00 as advances on his settlement from the law firm of Attorneys A and B.

16.     Between on or about March 2017 and June 2019, **ANTHONY ROBINSON** received approximately $32,700.00 in loans or advances on his settlement from the law firm of Attorney C.

17.     Between on or about April 2017 and March 2019, **AUDREY HARRIS** received approximately $14,600.00 in loans or advances on her settlement from the law firm of Attorneys A and B.

18.     Between on or about May 2017 and July 2019, **JERRY SCHAFFER** received approximately $11,650.00 in loans or advances on his settlement from the law firm of Attorneys A and B.

19.     Between on or about May 2017 and on or about July 2019, **KEISHIRA ROBINSON** received approximately $2,620.00 in loans or advances on her settlement from the law firm of Attorneys A and B.

20.     On or about September 28, 2017, **ANTHONY ROBINSON**, **HARRIS**, **SCHAFFER**, and **KEISHIRA ROBINSON** each provided false testimony in depositions taken in conjunction with the Harris Lawsuit filed by Attorney B and the Robinson Cross-Claim filed by Attorney C.

21.     On or about June 19, 2019, Attorney B sent an email to counsel for C.R. England, copying Attorney C, confirming an agreement to settle the case for a total value of $4,725,000.00 plus mediation costs.

22.     On or about July 18, 2019, Attorney B picked up five settlement checks from C.R. England and Chubb for **ANTHONY ROBINSON**, **HARRIS**, **SCHAFFER**, and **KEISHIRA ROBINSON**.

23.     On or about July 19, 2019, Attorney C's law firm deposited settlement checks in the amount of approximately $898,422.87 from C.R. England and approximately $601,577.13 from Chubb for **ANTHONY ROBINSON**.

24.     On or about July 19, 2019, the law firm of Attorneys A and B deposited a settlement check in the amount of approximately $2,100,000.00 from Chubb for **HARRIS**.

25.     On or about July 19, 2019, the law firm of Attorneys A and B deposited a settlement check in the amount of approximately $1,000,000.00 from C.R. England for **SCHAFFER**.

26.     On or about July 19, 2019, the law firm of Attorneys A and B deposited a settlement check in the amount of approximately $125,000.00 from C.R. England for **KEISHIRA ROBINSON**.

27.     On or about July 24, 2019, **KEISHIRA ROBINSON** cashed a settlement check in the amount of approximately $40,080.84 from the law firm of Attorneys A and B.

28.     On or about July 29, 2019, **HARRIS** deposited a settlement check in the amount of approximately $675,000.00 from the law firm of Attorneys A and B.

29.     On or about July 29, 2019, **SCHAFFER** deposited a settlement check in the amount of approximately $430,463.99 from the law firm of Attorneys A and B.

30.     On or about July 30, 2019, **ANTHONY ROBINSON** endorsed a settlement check in the amount of approximately $534,983.33 from Attorney C's law firm, of which he deposited approximately $524,983.33 and withheld approximately $10,000.00 in cash.

31.     On or about July 26, 2019 and August 6, 2019, the law firm of Attorneys A and B issued checks to the personal law firm of Attorney A for attorney fees in the amount of approximately $481,338.14 related to this staged accident.

32.     On or about August 5, 2019, the law firm of Attorneys A and B issued checks to the personal law firm of Attorney B for attorney fees in the amount of approximately $233,865.78 related to this staged accident.

33.     Beginning on or about July 26, 2019 and continuing until on or about August 18, 2019, the law firm of Attorneys A and B issued checks to other associates of the law firm of Attorneys A and B for attorney fees totaling approximately $235,164.35 related to this staged accident.

34.     On or about July 29, 2019, the law firm of Attorney C issued checks to the law firm of Attorneys A and B totaling approximately $135,386.64 for fees and costs associated with representing **ANTHONY ROBINSON** in this staged accident.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2 - 3
(Mail Fraud)

### A. AT ALL TIMES MATERIAL HEREIN:

The allegations contained in Parts A, C, and D of Count 1 are hereby re-alleged and incorporated herein by reference.

### B. THE OFFENSE:

On or about the dates and in the approximate amounts listed below, in the Eastern District of Louisiana and elsewhere, the defendants, **ANTHONY ROBINSON**, **HARRIS**, **SCHAFFER**, and **KEISHIRA ROBINSON**, and others known and unknown to the Grand Jury, for the purpose of executing or attempting to execute the scheme and artifice to defraud set forth in Part C of Count 1, did knowingly cause to be delivered by mail, according to the directions thereon, the following:

| COUNT | DESCRIPTION OF MAILING |
|-------|------------------------|
| 2 | July 17, 2019, C.R. England mailed an envelope via FedEx from West Valley City, Utah, to their counsel at **** Poydras Street, New Orleans, LA 70130, containing three settlement checks in the amount of $1,000,000.00 for **JERRY SCHAFFER**, $125,000.00 for **KEISHIRA ROBINSON**, and $898,422.87 for **ANTHONY ROBINSON**. |
| 3 | July 17, 2019, Chubb mailed an envelope via FedEx from Wilmington, Delaware to counsel for C.R. England at **** Poydras Street, New Orleans, LA 70130, containing two settlement checks in the amount of $2,100,000.00 for **AUDREY HARRIS**, and for $601,577.13 for **ANTHONY ROBINSON**. |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## NOTICE OF FORFEITURE

1.      The allegations of Counts 1 through 3 are incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States.

2.      As a result of the offenses alleged in Counts 1 through 3, the defendants, **ANTHONY ROBINSON**, **AUDREY HARRIS**, **JERRY SCHAFFER**, and **KEISHIRA ROBINSON**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property real or personal which constitutes or is derived from proceeds traceable to said offenses, including but not limited to any of the following:

> $393,726.28 U.S. currency;
>
> 2018 Maserati Levante SUV, bearing VIN:
> ZN661XUA9JX294234;
>
> 2014 Mercedes Benz E550, bearing VIN:
> WDDKK7DF5EF229195;
>
> 2014 Chevrolet Corvette, bearing VIN: 1G1YD3D7XE5114915;
>
> 2016 Mercedes Benz CLA 250, VIN:
> WDDSJ4EBXGN351752.

3.      If any of the above-described property, as a result of any act or omission of the defendants:

> a.      cannot be located upon the exercise of due diligence;
>
> b.      has been transferred or sold to, or deposited with, a third person;
>
> c.      has been placed beyond the jurisdiction of the Court;
>
> d.      has been substantially diminished in value; or
>
> e.      has been commingled with other property which cannot be subdivided without difficulty;

the United States shall seek a money judgment and, pursuant to Title 21, United States Code, Section 853(p), forfeiture of any other property of the defendant up to the value of said property.

A TRUE BILL:

FOREPERSON

PETER G. STRASSER
UNITED STATES ATTORNEY

SHIRIN HAKIMZADEH
Assistant United States Attorney

BRIAN M. KLEBBA
MARIA M. CARBONI
EDWARD J. RIVERA
Assistant United States Attorneys

New Orleans, Louisiana
October 16, 2020

FORM OBD-34

No.

# UNITED STATES DISTRICT COURT

Eastern _____ District of _____ Louisiana

_____ Criminal _____ Division

## UNITED STATES OF AMERICA

v.

**ANTHONY ROBINSON**
**AUDREY HARRIS**
**JERRY SCHAFFER**
**KEISHIRA ROBINSON**

# INDICTMENT

INDICTMENT FOR CONSPIRACY TO COMMIT MAIL
FRAUD, MAIL FRAUD, AND NOTICE OF FORFEITURE

**VIOLATIONS:**   18 U.S.C. § 371
18 U.S.C. § 1341
18 U.S.C. § 2

A true _____

_____ Foreperson

Filed in open court this _____ day of _____

_____ A.D. 2020.

_____ Clerk

Bail, $ _____

**SHIRIN HAKIMZADEH**
**Assistant United States Attorney**